# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **LOTTIE S FIELDS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 2:10-cv-02531-JEO |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

The above-entitled action is brought by the plaintiff, Ms. Lottie Fields (hereinafter "Ms. Fields"), to recover damages against the defendant, the United States of America (hereinafter "Defendant"), premised on injuries she allegedly suffered during, and as a result of, a dental procedure she underwent on an unspecified date. It is before the court on Defendant's Motion to Dismiss Ms. Fields's claims in their entirety (doc. 5), and Ms. Fields's Motion to Amend her Complaint (doc. 9). Both motions have been fully briefed and are now subject to the court's review. Upon consideration, the court finds that Defendant's Motion to Dismiss is due to be granted and Ms. Fields's Motion to Amend is due to be denied.

**I.   FACTUAL AND PROCEDURAL HISTORY**

On March 9, 2010, Ms. Fields, acting *pro se*, filed her Complaint in the Jefferson County Circuit Court. The substance of the Complaint is set out in its entirety as follows:

> Defendants, UAB Medical Clinic ENT, Cooper Green Clinic ENT, Dr. Shawn Burl, Dentist and Dr. Leotis Williams, Dentists violated my body by injecting an object which I believe or I am sure are microchips. These microchips were sold to them or by a third party by another defendant, Verichip Corp. At this time microchips were not legally sold for human beings.
>
> In addition to the violations the objects injected in my body, especially my ear has

>caused irreparable damage.
>
>The main purpose for the violation was/is to keep track of my every move and also mind control.  This is where the other defendants come into play  Defendants, George S. Roberts, Rev. Robert Bearden, Jeff Fuqua (FBI Agent) and Oscar Hammond, Real Estate agent.  There are possible others.
>
>The goal is/was to turn my entire life into a money making machine.
>
>Signed this day:  March 9, 2010
>
>Lottie S. Fields

(Doc. 1 (Notice of Removal) pg. 14 of 63).  In the Complaint, Ms. Fields named the following defendants:  (1) "University of B'ham Hospital Ear, Nose, Throat"; (2) "Cooper Green Hospital Ear, Nose & Throat"; (3) "Dr. Shawn Burl, MD"; (4) "Dr. Leotis Williams"; (5) "Mr. Robert Bearden, III"; (6) "George S. Roberts"; (7) "Oscar Hammond"; (8) "Verichip Corp."; and (9) "Jeff Fuqua FBI."  (*Id*., pp. 5-13 of 63).

On April 1, 2010, Ms. Fields filed an "Amended Complaint" which stated in its entirety:

>I am adding an additional defendant to my complaint.  The total defendants in all is 10.
>
>Ear, Nose & Throat Clinic, P.A.
>652 Lamb Avenue
>Birmingham, AL 35211
>205-787-1457

(*Id*., pg. 16 of 63).

UAB Hospital Ear Nose and Throat, Cooper Green Hospital Ear Nose and Throat, Dr. Shawn Burl, Dr. Leotis Williams, and Verichip Corporation filed separate motions to dismiss Ms. Fields's claims against them premised, *inter alia*, on the Complaint's failure to state a claim against them.  On May 4, 2010, the Jefferson County Circuit Court, Ed Ramsey, Circuit Judge, concluded that "the claims filed by [Ms. Fields] are without merit and fail to state a valid cause

of action." (*Id*., pg. 40 of 63). The court granted the above motions to dismiss and afforded Ms. Fields an additional thirty days to serve defendants Robert Bearden, III, George S. Roberts, and Oscar Hammond. (*Id*.) The court did not address Ms. Fields's claims against defendant Jeff Fuqua in its Order. (*Id*.)

On May 26, 2010, Ms. Fields filed a Motion to Dismiss her claims without prejudice as against Robert Bearden, III, George S. Roberts, and Oscar Hammond, "for not being served." (*Id*., pg. 42 of 63). The court granted this motion on June 3, 2010, in an Order which stated: "Plaintiff's Motion to Dismiss is granted. This case is hereby dismissed without prejudice. Costs of court are taxed as paid." (*Id*., pg. 43 of 63).

On June 11, 2010, Ms. Fields filed a Motion for Default Judgment against Jeff Fuqua. (*Id*. pg. 45 of 63). The court set aside its Order of June 3, and on July 2, granted Ms. Fields's Motion for Default Judgment against Jeff Fuqua, "with leave to prove damages." (*Id*. pp. 46-47 of 63). On July 30, 2010, Defendant United States of America, which was not named as a defendant in Ms. Fields' Complaint or Amended Complaint, filed a Motion to Set Aside Default Judgment against Jeff Fuqua. (*Id*. pg. 49-52 of 63). The court granted the same on September 2, 2010, providing Jeff Fuqua twenty days to file a response to Ms. Fields's claims. (*Id*. pg. 63 of 63).

The case was removed to this court on September 17, 2010, by the United States of America, acting on behalf of Jeff Fuqua, premised on the court's jurisdiction pursuant to 28 U.S.C. § 1442(a)(1). That provision states that

> [a] civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

3

>     (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.[1]

On September 23, 2010, Defendant filed the pending Motion to Dismiss for Lack of Jurisdiction, to which Ms. Fields responded in opposition on October 20, 2010. (Docs. 5, 7, respectively). The motion came under submission when the United States filed its reply brief on October 27. (Doc. 8). On October 29, 2010, Ms. Fields filed her pending Motion to Amend Complaint, which came under submission on November 16, 2010. (Doc. 9).

## II. STANDARD OF REVIEW

FED. R. CIV. P. 12(b)(1) provides for the dismissal of an action where the court finds that it does not have subject matter jurisdiction. FED. R. CIV. P. 12(b)(6) provides for dismissal for failure of a party to state a claim for which relief can be granted. Where "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1)

---

[1] The removal was also effectuated pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2679(d)(2), which provides that

>     Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.

In addition to the removal documents, the United States filed a Certification of Scope of Employment, completed by Joyce White Vance, United States Attorney for the Northern District of Alabama. (Doc. 3). In it, Ms. Vance certified that Jeff Fuqua was acting "within the scope of his official duties as a Special Agent with the Federal Bureau of Investigation" during all events relevant to Ms. Fields's claims against him. (*Id*.) Ms. Fields has not disputed that Jeff Fuqua's involvement in the facts alleged in her Complaint were conducted within the scope of his employment with the FBI, nor has she opposed the substitution of the United States as the sole defendant in place of Jeff Fuqua.

jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

      A.      **Lack of Subject Matter Jurisdiction**

A motion to dismiss for lack of subject matter jurisdiction should be granted "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161. Lack of subject matter jurisdiction may be found through an examination of: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts. See id. Because the burden of proof on a motion to dismiss for lack of subject matter jurisdiction is on the party asserting jurisdiction, the plaintiff "constantly bears the burden of proof that jurisdiction does in fact exist." *See Ramming*, 281 F.3d at 161, citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995), and *Menchaca v. Chrysler Credit Corp*, 613 F.2d 507, 511 (5th Cir. 1980).

      B.      **Failure to State a Claim Upon Which Relief Can Be Granted**

Dismissal for failure to state a claim upon which relief may be granted does not require appearance, beyond a doubt, that the plaintiff can prove no set of facts in support of claim that would entitle him to relief. *Bell Atlantic v. Twombly,* 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), *abrogating Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). Rather, a motion to dismiss under Rule 12(b)(6) should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1964-65. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

5

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.*, quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986).  However, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.*, 127 S. Ct. at 1969.  In deciding a Rule 12(b)(6) motion, the court "must accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party.  *Dacosta v. Nwachukwa,* 304 F.3d 1045, 1047 (11th Cir. 2002), citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998).  "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003), quoting *Marsh v. Butler County*, 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001).  Furthermore, "[a] complaint may not be dismissed because the Plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on any possible theory." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original), citing *Robertson v. Johnson,* 376 F.2d 43 (5th Cir. 1967).  "The threshold of sufficiency that a complaint must meet to survive a Motion to Dismiss for failure to state a claim is ... 'exceedingly low.'" *Ancata v. Prison Health Serv., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985), quoting *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev.*, 711 F.2d 989, 995 (11th Cir. 1983).

### III.  ANALYSIS

####    1.   **Defendant's Motion to Dismiss**

The court is able to make out only a small number of allegations from the facts vaguely

referenced by Ms. Fields in her Complaint. Those facts include the following: (1) Ms. Fields has sued various dentists and ear, nose and throat clinics, (2) premised on an unspecified procedure which the court has assumed was a dental procedure, though that is not entirely clear, (3) the procedure was performed at an unspecified location, presumably -- though again, this is not absolutely clear -- by the individual dentists named in the Complaint, on an unspecified date, and (4) unbeknownst to Ms. Fields, the procedure involved the implantation of a microchip or microchips somewhere inside Ms. Fields's body, possibly her ear. The nature of the microchip(s) is unknown, as is the manufacturer. Ms. Fields believes the microchip(s) were deliberately implanted in her body for the purpose of keeping track of her movements, and to record information about the people she worked with in her home-based business. As set out *supra*, the only remaining defendant in this case is the United States of America, on behalf of Jeff Fuqua, a special agent with the Federal Bureau of Investigation. His involvement in the acts alleged by Ms. Fields is not at all clear from the Complaint.

     Defendant offers two grounds for dismissal in its Motion to Dismiss. First, Defendant argues that this court lacks jurisdiction over the subject matter of Ms. Fields's claims. Second, Defendant maintains that the Complaint is so vague that it cannot form a meaningful response thereto, and should therefore be dismissed for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6). As stated *supra*, because Defendant's motion under Rule 12(b)(1) implicates the court's ability to preside over this case, the court addresses that argument first.

     While Ms. Fields does not specify the statutory vehicle under which her claims emerge, the Federal Tort Claims Act is the exclusive remedy for torts allegedly committed by federal

employees who were acting in the scope of their employment at the time of their alleged misconduct. 28 U.S.C. § 2679(b)(1). 28 U.S.C. § 2679(b)(1) states the following:

> The remedy against the United States [under this Act] for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

Before asserting a claim under the FTCA in any court, a claimant must first satisfy the administrative exhaustion requirements of that Act as codified in 28 U.S.C. § 2675(a):

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

The facts alleged in the Complaint do not indicate that Ms. Fields filed a complaint with the Federal Bureau of Investigation about Jeff Fuqua's involvement in her case. In its motion to dismiss, Defendant argues that Ms. Fields, in fact, failed to file such a complaint pursuant to the FTCA, and therefore did not exhaust her administrative remedies before filing her Complaint in State court. According to Defendant, this failure to satisfy the FTCA's administrative exhaustion requirement deprives this court of subject matter jurisdiction to hear her claims.

In her response to Defendant's motion to dismiss, Ms. Fields does not dispute that her

claims fall under the provisions of the Federal Tort Claims Act. She does, however, argue that she exhausted her administrative remedies before filing her Complaint in State court. She states that she "had exhausted all my administrative remedies with the little information provided or given to me by the appropriate governmental agency prior to instituting this action." (Doc. 7 pg. 5). None of these facts, however vague they may be, are alleged in Ms. Fields's Complaint. Furthermore, even if they were included in the Complaint, they do not sufficiently inform Defendant, or the court, who Ms. Fields spoke with at which location(s) of which agency, on which date(s), nor do they explain the essence of her complaint(s) filed with that agency, or how the complaint(s) were addressed by such agency -- including whether a final decision was made, transmitted in writing and delivered to Ms. Fields by certified or registered mail pursuant to 28 U.S.C. § 2675(a). The most information Ms. Fields has provided to the court is her statement in her opposition brief that "I made contact with the Federal Defendant in seeking help to resolve [at] least two of the violations mentioned in my complaint in or roundabout 2008-2009." (*Id*.) What remains unclear, however, is how many "violations" Ms. Fields allegedly endured at the hands of Defendant, whether the two she claims to have reported to the "Federal Defendant" encompass all the violations she alleges in her Complaint, or whether, by "Federal Defendant," Ms. Fields is referring to Jeff Fuqua, the FBI, or some other official, division or branch of the United States. The court also cannot discern whether Ms. Fields made this complaint in 2008-2009, or whether she complained at a later, unspecified date about violations that occurred in 2008 or 2009.

     Ms. Fields also argues that she spoke with Mike Casanova sometime in 2004 "about the violations of privacy in home." (*Id*.) Ms. Fields does not explain who Mike Casanova is, what

9

"violations of privacy in home" she complained to him about, or whether these violations are in any way related to the microchips she claims were implanted in her body. Because the Complaint does not allege when Ms. Fields was implanted with microchips, the court cannot determine whether her complaint to Mike Casanova in 2004 could have involved the microchips, or whether that complaint could have pertained only to some other invasion of privacy that was occurring in her home at that time. In short, even if these facts -- however vague -- were alleged in Ms. Fields's Complaint instead of her opposition brief, the court remains at a loss in its effort to determine whether Ms. Fields ever satisfied her administrative exhaustion requirement under the FTCA.

Ms. Fields finally states that

> I made several calls to the FBI Agency about this Federal Defendant. It was said that the only recourse was to file a complaint and send it to 1000 18th Street North -- Birmingham, AL 35205. The complaint was to be addressed to Complaints Dept., because there was not a regular designated person to handle the complaints. I was told that the complaint department had a new agent over it every day. With this information given I deemed it not worthy to put in writing my complaint due to the fact that it would probably never be filed.

(Doc. 7, pp. 5-6). From this paragraph alone it is apparent that Ms. Fields opted not to file any formal complaint with the Federal Bureau of Investigation. Therefore, no final decision could have been made by that agency which would have satisfied the administrative exhaustion requirement of the FTCA.

Federal courts are courts of limited jurisdiction. As such, a federal court must take care to ensure that it has jurisdiction to hear all cases that come before it. *See Rembert v. Apfel*, 213 F.3d 1331, 1333-34 (11th Cir. 2000). This court, therefore, lacks jurisdiction over the subject matter of Ms. Fields's claims to the extent the FTCA requires her to first exhaust her

administrative remedies and Ms. Fields has failed to do so. This limitation on the court's jurisdiction is underscored by the fact that the United States is now the sole defendant in this case and, "as sovereign, [it] is immune from suit save as it consents to be sued," *United States v. Sherwood*, 312 U.S. 584, 586, 61 S. Ct. 767, 770, 85 L. Ed. 1058 (1941) (citing *United States v. Thompson,* 98 U.S. 486, 25 L. Ed. 194 (1878); *United States v. Lee,* 106 U.S. 196, 1 S. Ct. 240, 27 L. Ed. 171 (1882); *Kansas v. United States,* 204 U.S. 331, 27 S. Ct. 388, 51 L. Ed. 510 (1907); *Minnesota v. United States,* 305 U.S. 382, 387, 59 S. Ct. 292, 294, 83 L. Ed. 235 (1939); *Keifer & Keifer v. Reconstruction Finance Corporation,* 306 U.S. 381, 388, 59 S. Ct. 516, 517, 83 L. Ed. 784 (1939); *United States v. Shaw,* 309 U.S. 495, 60 S. Ct. 659, 84 L. Ed. 888 (1940)). *See also United States v. Mitchell*, 445 U.S. 535, 100 S. Ct. 1349, 63 L. Ed. 2d 607 (1980) (same). "The terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Sherwood*, 312 U.S. at 586, 61 S. Ct. at 770. *See also FDIC v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 1000, 127 L. Ed. 2d 308 (1994) ("Sovereign immunity is jurisdictional in nature.").

Under the Federal Tort Claims Act, it is clear that a claimant may not assert claims against the United States without first exhausting administrative remedies pursuant to 28 U.S.C. § 2675(a), *supra*, and 28 U.S.C. § 2401(b).[2] Because the court cannot discern any basis for

---

[2] 28 U.S.C. § 2401(b) provides that

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

This requirement was instituted by Congress in 1966 as an amendment to the Federal Tort Claims Act, as explained by the Supreme Court in *McNeil v. United States*, 508 U.S. 106, 112, 113 S. Ct. 1980, 1983, 124 L. Ed. 2d 21 (1993):

concluding that Ms. Fields has satisfied this requirement, and finds that Ms. Fields has acknowledged her failure to do so in her opposition brief, the court will not assume that it may exercise subject matter jurisdiction over her claim(s). Accordingly, Defendant's Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(1) is due to be granted.[3]

### 2. Ms. Fields's Motion to Amend

Ms. Fields has filed a motion to amend her Complaint to add additional facts and information relevant to her initial claims. (Doc. 9). The proposed Amended Complaint states that Ms. Fields "met with the Federal Defendant in or roundabout 2007-2008 seeking help for the violations [she] was experiencing." (*Id.*, Exh. 1 pg. 3). She explains that she waited for approximately "thirty to forty minutes after which time the Federal Defendant appeared from the parking lot." She states further that

> According to FBI information a person comes from the inside of the headquarters office

---

Prior to 1966, FTCA claimants had the option of filing suit in federal court without first presenting their claims to the appropriate federal agency. Moreover, federal agencies had only limited authority to settle claims. *See* Federal Tort Claims Act of 1946, ch. 753, §§ 403(a), 420, 60 Stat. 843, 845. Because the vast majority of claims ultimately were settled before trial, the Department of Justice proposed that Congress amend the FTCA to "requir[e] all claims to be presented to the appropriate agency for consideration and possible settlement before a court action could be instituted. This procedure would make it possible for the claim first to be considered by the agency whose employee's activity allegedly caused the damage. That agency would have the best information concerning the activity which gave rise to the claim. Since it is the one directly concerned, it can be expected that claims which are found to be meritorious can be settled more quickly without the need for filing suit and possible expensive and time-consuming litigation." S.Rep. No. 1327, 89th Cong., 2d Sess., 3 (1966), U.S.Code Cong. & Admin.News 1966, pp. 2515, 2517.

The Senate Judiciary Committee further noted that "the improvements contemplated by [the 1966 amendments] would not only benefit private litigants, but would also be beneficial to the courts, the agencies, and the Department of Justice itself." *Id.*, at 2, U.S.Code Cong. & Admin.News 1966, p. 2516.

[3] Because the court finds that Ms. Fields' claims are due to be dismissed pursuant to Rule 12(b)(1), it does not address whether her Complaint or Amended Complaint states a claim upon which relief can be granted under Rule 12(b)(6). Because Ms. Fields is acting *pro se*, the court would be more inclined to order her to replead her claims pursuant to Rule 12(e), than to dismiss her claims altogether. The court cannot, however, pursue this course of action premised on its finding that it lacks jurisdiction over Ms. Fields's claims.

>to meet with an individual. In looking back the guards did not make a call to inform someone on the inside of headquarters office that I was there to see someone, instead they received a call and I was asked to wait for the Federal Defendant whom I had never met.

(*Id.*) Ms. Fields seeks to amend her Complaint to declare that Jeff Fuqua was

>involved in a scheme that turned my life, my livelihood, and my privacy upside down and turned my life into one of the biggest means of making money. This was achieved by (1) Violating my body with microchips, and (2) Violating my home and my vehicle with cameras, tracking and listening devices. The microchips and other devices serve as a means of violating my thoughts and mind control, and the knowing of my whereabouts at all times. There are special made devices that are designed to accomplish such. Such devices consist of cell phones and tracking microchips. As a Former Small Black Entrepreneur I designed and sold my own products to companies and schools in the Birmingham Metro Areas. I also created a monthly ad newsletter for business of all kinds to advertise their products and services. The ad newsletter was catered mostly to Black Entrepreneurs, because it was the least expensive way to promote their products & services. My contact with the black entrepreneurs gave this Federal Defendant knowledge of who the black entrepreneurs were and help him track most of all of them. The listed devices gave this Federal Defendant access to my whereabouts and my business contacts. After I made contact with them, this Federal Defendant also made contact with them by phone calls or in person. He slandered my business reputation and personal life with unbelievable lies. He also sold them on my life as a money making machine. The microchip implant through its mind reading methods allowed the Federal Defendant to know what took place at a particular meeting or gathering I was involved in by retrieving my thoughts. I was treated as if I was an FBI Informant by many black entrepreneurs. My home based business was consistently violated with cameras and listening devices in order to sabotage my plans and contacts in advance. Similar devices were also placed in every room of my home, including my bathroom. This allowed the violator to watch my every move and to know the kinds of products I used for home and personal use. To help carry out this evil scheme the Federal Defendant sold unfaithful clergies of the Birmingham churches and corporations on his money making scheme. Because individuals and groups want money they have been allowed to damage my home by going in and out and using whatever necessary to violate my life. I have been treated with indifference by this Federal Defendant for the sole purpose of making money off of my entire life. There are unscrupulous men and women who have and are committing crime against my home, my life and livelihood because they know that this United States Federal Bureau of Investigation Employee know as the Federal Defendant is deeply involved in this crime scheme. I have suffered so much stress and emotional distress, financial ruins and social networking problems because of none assistance from this United States Federal Defendant. It is by the Grace of God that I am able to stand and defend myself in this way.

(*Id.*).  In her prayer for relief, Ms. Fields seeks to add a claim for compensatory damages, premised on "negligence and emotional distress," in the amount of $30 million.[4]  (*Id.*)

The court's consideration of a Motion to Amend is governed by FED. R. CIV. P. 15(a). That provision states that a party may amend its pleading once "as a matter of course" within 21 days of serving the same, or within 21 days after service of a responsive pleading.  Otherwise, a party may amend only with the opposing party's consent or with leave of the court.  FED. R. CIV. P. 15(a)(1).  Ms. Fields requests leave of the court to amend her Complaint, and that request is opposed by Defendant.

"The court should freely give leave [to amend] when justice so requires."  FED. R. CIV. P. 15(a)(2).  Nevertheless, "[t]he decision to grant or to deny leave to amend is within the discretion of the trial court." *Layfield v. Bill Heard Chevrolet, Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S. Ct. 795, 28 L. Ed. 2d 77 (1971)).  "If the underlying facts or circumstances relied on by plaintiff may be a proper subject of relief, leave to amend 'should be freely given.'" *Stringer v. Jackson*, 392 Fed. Appx. 759, 760 (11th Cir. 2010) (quoting *Hall v. United Ins. Co. of Am.,* 367 F.3d 1255, 1262 (11th Cir. 2004)).  "However, a district court may properly deny leave to amend under Rule 15(a) if such amendment 'would be futile.'  Denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." *Id*.

The court finds nothing in the proposed Amended Complaint which would cure the

---

[4] In the Amended Complaint, Ms. Fields requests damages in the amount of "$30,000.000.00." (*Id.*)  It is not clear whether this notation contains a typographical error, or whether Ms. Fields is seeking $30,000.00 in damages, or $30 million.  Because the court's disposition of Ms. Fields's Motion to Amend does not depend on the amount of compensatory damages she requests, however, the court pretermits any further discussion of the same.

court's lack of subject matter jurisdiction over Ms. Fields's claims. While the proposed Amended Complaint arguably contains a broader factual basis to support Ms. Fields's claims, it offers nothing to support her position that she timely exhausted her administrative remedies prior to filing her Complaint in State court. She explains that she visited with the "Federal Defendant" on at least one occasion, but rather than following through as instructed by filing a formal complaint with the Federal Bureau of Investigation, she filed her Complaint in State court on the basis that the "Federal Defendant" treated her verbal complaint(s) with indifference. Because Ms. Fields readily admits that she did not file a complaint with the FBI pursuant to the FTCA, the court finds no basis to conclude -- even from the proposed Amended Complaint -- that she has exhausted her administrative remedies. Consequently, such an amendment to her pleadings would be futile, as it does not vest this court with jurisdiction over the subject matter of her claims. Therefore, pursuant to the terms of Rule 15(a) and the binding case law of this circuit, the court finds that Ms. Fields's Motion to Amend is due to be denied.

### III. CONCLUSION

Premised on the foregoing, the court finds that it lacks jurisdiction over the subject matter of Ms. Fields's claims as alleged in her Complaint. Therefore, Defendant's Motion to Dismiss the same pursuant to FED. R. CIV. P. 12(b)(1) (doc. 5) is due to be granted. Furthermore, because the court finds that Ms. Fields's proposed Amended Complaint does not cure the court's lack of subject matter jurisdiction in this case, her Motion to Amend her Complaint (doc. 9) is due to be denied as futile pursuant to FED. R. CIV. P. 15. A separate Order will be entered.

**DONE**, this the 26th day of April, 2011.

                                                                **JOHN E. OTT**
                                                                United States Magistrate Judge